UNITED STATES of America,
Appellee,

v.

Joseph BROWN, Appellant.

No. 8418.

United States Court of Appeals
Fourth Circuit.

Argued Nov. 8, 1961.

Decided Nov. 21, 1961.

John H. Wrighten, Charleston, S. C. (Benjamin L. Cook, Jr., Charleston, S. C., on brief), for appellant.

Terrell L. Glenn, U. S. Atty., Columbia, S. C. (Thomas P. Simpson, Asst. U. S. Atty., Columbia, S. C., on brief), for appellee.

Before SOPER, BRYAN and BELL, Circuit Judges.

PER CURIAM.

Convicted by a jury in the District Court of receiving and having in his possession 12 cases of beer with knowledge that they had been stolen, 18 U.S. C.A. § 659, Joseph H. Brown appeals. They were found in his apartment in Charleston, South Carolina at about 2 o'clock on the morning of July 6, 1960. That the beer had been a part of an interstate shipment from Tampa, Florida to Charleston and had been stolen therefrom during the night of July 5 or early morning of July 6, 1960 is not here questioned.

In essence Brown made two points before the trial court, whose adverse rulings thereon he now assigns as error.

The testimony as to his possession of the beer, he first avers, should have been suppressed because its discovery in his apartment was the result of an illegal search and seizure. He next contends the evidence at trial was not sufficient to prove that while the beer was in his possession he knew it had been stolen. In denying the defendant's motions, predicated on these assertions, to suppress and to grant a judgment of acquittal, the District Judge was plainly correct.

The fatal infirmity of these assignments of error appears at once upon a review of the evidence. Early in the morning of July 6, 1960, Sergeant Whitely of the Charleston police while cruising in his patrol car observed a man walking away from a Plymouth automobile parked on the west side of St. Phillip Street, near the corner of Line Street. This location is just opposite the common entrance at 259 St. Phillip to Brown's second floor apartment and the Belvedere Night Club, which was then operated by Brown on the first floor. The sergeant continued on his rounds, but on returning to the vicinity a few minutes later he saw Brown, an acquaintance, leaving the club. Brown came over to the police car then stopped for the traffic light, and talked briefly with the sergeant.

When some twenty minutes later the sergeant's beat again brought him to the intersection of St. Phillip and Line Streets, he noted on the corner the same man who had earlier walked away from the Plymouth. Further on his tour he saw Brown a city block and a half away, standing in a store doorway. Quite soon afterwards the sergeant was radioed from police headquarters to go to Line and St. Phillip Streets to investigate the unloading of an automobile then in progress. Immediately he drove north along St. Phillip Street. A block distant from Line, he saw a man run from the west to the east side of St. Phillip and into an alley near the corner. Parking his car on the east side of St. Phillip, the sergeant noted two men leave the door of Brown's apartment and walk to the corner of Line and St. Phillip. Thereupon he crossed over to the Plymouth automobile which had been seen there before. On the rear seat were several cases of beer. Upon the arrival of another police cruiser, the two men on the corner, later identified as Allen Waring and Richard Parsons, were arrested.

When this cruiser left with the two men, Brown asked the sergeant what was the "trouble", to which the officer rejoined, "Joe, you know", adding, "I would like to take a look in your place." Brown replied, "All right, sir, but before you go in there, I am going to tell you right now, you are going to find 10 cases of that beer in my place." Together they went into the Belvedere Club. Finding nothing there, Whitely asked where was the beer. "Upstairs", Brown responded. The two then entered Brown's apartment. A dozen cases of beer were in the hallway; they were of the same brand as that in the Plymouth. "Well, Joe, you know what this is going to mean," the officer admonished, and Brown conceded, "Yes, sir, I know." Whitely continued, "I am going to have to take you and the beer to headquarters". Brown answered, "Yes, sir, I know that". This beer was then put in the Plymouth automobile with the first 20 cases. Brown and the beer were carried to the police station. Waring, Parsons and Brown were detained by the city police for about 72 hours but then released.

Upon ascertaining that the beer in Brown's apartment and that first seen in the Plymouth automobile together were a part of the interstate shipment heretofore described, a Special Agent of the Federal Bureau of Investigation questioned Brown, Parsons and Waring while they were in police custody. Brown denied any knowledge of how the beer got into his apartment. On August 1, 1960 all three were arrested on a Federal warrant, and ultimately they were indicted under 18 U.S.C. § 659. The first count of the indictment charged Parsons and Waring with the theft of 20 cases of beer; the second count accused Brown

of criminally receiving and possessing 12 cases; and a third count laid to Waring a like receipt and possession of 20 cases. Brown and Parsons were tried together and found guilty. Brown's conviction alone is before us.

 Obviously, Brown was not aggrieved by the search and seizure in his apartment. In effect he invited the policeman to look in his club and in his apartment. No intimidation or unfair inducement is even hinted as responsible for Brown's ready consent to the search. The object of Whitely's quest was, of course, known to Brown. Moreover, the officer had justification for his belief that the beer in the hallway bore the taint of current larceny. What he had observed on his earlier surveillance, especially after the radio alert, gave him fair cause to regard the beer in the Plymouth as purloined goods. Referring to this beer, Brown had told the officer he would find on his premises cases of *"that* beer". Hence, he was by duty bound to seize it. He had reasonable grounds to arrest Brown, moreover, for Brown did not explain his possession of the questionable cases.

In these circumstances no valid objection could be made to the proof at trial of the beer's discovery. Only when the procurement of the evidence is effected through unlawful means is its admission barred. Brown's consent dispelled all uncertainty on this head. Grice v. U. S., 146 F.2d 849 (4 Cir. 1945); U. S. v. Bianco, 96 F.2d 97 (2 Cir. 1938).

This chronicle of the evidence confirms the rectitude of the jury's condemnation of Brown. Despite his compromising possession of patently thieved wares, he did not venture to meet its incrimination. Pearson v. U. S., 192 F. 2d 681, 689 (6 Cir. 1951); Thomas v. U. S., 11 F.2d 27 (4 Cir. 1926). The only evidence at all approaching an explanation was the F. B. I. agent's testimony that Parsons told him he had put two of the cases in Brown's apartment and at a time when no one else was there. No deprivation of Constitutional rights whatsoever was suffered by Brown.

We find the appeal without merit and we affirm.

Affirmed.